IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:14-cv-04036-NKL |
| | ) | |
| STATE OF MISSOURI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Pending before the Court are the cross motions for summary judgment of Plaintiff United States of America and Defendants State of Missouri, *et al.* [Docs. 38 and 40]. For the reasons set forth below, Plaintiff United States' motion for partial summary judgment, Doc. 38, is granted in part, and Defendants' motion for summary judgment, Doc. 40, is denied.

**I.     Undisputed Facts**

The Missouri National Guard ("Guard") employs technicians to provide administrative, personnel, maintenance, and other support to the Guard's soldiers. These employees are referred to as "dual status technicians" because they are both full-time federal civilian employees and reservists in the Guard. The Guard is also responsible for staffing a full-time, active duty military program called the Active Guard and Reserve ("AGR") program. [Doc. 41, p. 3; Doc. 49, p. 4]. Unlike dual status technicians, AGR soldiers are on active military duty for the Guard. [Doc. 41, p. 4; Doc. 49, p. 4].

Dual status technicians often apply for and are accepted into full-time positions in the AGR program. [Doc. 41, p. 5; Doc. 49, p. 4]. Prior to July 2010, dual status technicians who accepted positions in the AGR program could choose either:

1) Leave Without Pay – Uniformed Services ("LWOP-US")[1]: [A] temporary non-pay status and non-duty status (or absence from a prescheduled tour of duty) granted at the employee's request. LWOP-US . . . is a nature of action specifically used to document a leave of absence to perform duty with the uniformed services. [Doc. 41-10; Office of Personnel Management definition], or

2) Separation – Uniformed Services ("Separation-US"): [A] separation action initiated by an agency when the employee enters on duty with the uniformed services and provides written notice of intent not to return to a position of employment with the agency or elects to be separated in lieu of placement in a leave without pay status. *Id.*

[Doc. 41, p. 6; Doc. 49, p. 4]. Employees on LWOP-US status received up to fifteen days of military leave each year pursuant to 5 U.S.C. § 6323(a)[2], in addition to receiving their military salary. [Doc. 41, p. 7; Doc. 49, p. 4]. Practically speaking, this leave allowance entitled them to fifteen days of dual status technician pay from the Guard each year while they were working full time as an AGR program participant. Those opting voluntarily for Separation-US status prior to July 2010 did not receive military leave. *See* 5 U.S.C. § 6323(a); [Doc. 41, p. 7; Doc. 49, p. 4].

After July 2010, Defendants no longer permitted dual status technicians seeking employment in the AGR program to take LWOP-US status. Instead, the Guard required

---

[1] In March 2010 the Office of Personnel Management discontinued the LWOP-US status and replaced it with "Absent-US" status, which afforded status holders the same fifteen days of military leave. "LWOP-US" is used throughout this Order to refer to both statuses synonymously.

[2] This section mandates the fifteen days of military leave for employees listed in 5 U.S.C. § 2105 and civilian employees in the National Guard are identified in that statute.

2

them to take Separation-US status. In addition, the dual status technicians who joined the AGR program after July 2010 are not given fifteen days of military leave pay. [Doc. 41, p. 9; Doc. 49, p. 4].

After July 2010, the Guard required dual status technicians enlisting as AGR employees to sign two forms: "Checklist for Technicians Entering AGR Active Duty Title 32 Military Career Service Program" ("AGR Checklist") and "Statement of Understanding." [Doc. 41, p. 10; Doc. 49, p. 4]. The AGR Checklist contains the following provisions:

> I understand that I am SEPARATING from the technician program as a condition of my AGR employment.
>
> I understand that, should I leave the AGR program, and the cumulative time spent as an AGR is less than 5 years, that I have reemployment rights under USERRA to a like military technician position with the Missouri National Guard.
>
> I understand that by electing Separation-US, I am not eligible for military leave accrual or use.

*Id.* The Statement of Understanding contains the following statement:

> As a Dual Status Military Technician, I understand as a condition of employment for entering the AGR career program, I will be separated from the Technician program under the provisions of Separation-US (SEP-US). All military leave accrued as a technician will be used prior to entering the AGR program. Military leave will not accrue while I am in a SEP-US status. I further understand that should I leave the AGR program, and the cumulative time spent as AGR is less than 5 years, that I have reemployment rights to a like Military Technician position within the Missouri National Guard. Also, I understand I will receive a briefing from the Employee Relations Branch of HRO prior to beginning this AGR tour and I will attend an AGR Orientation Briefing within one month of starting on AGR Orders.
>
> I have read and understood this condition of employment.

3

*Id.* If an applicant refuses to take Separation-US status or sign one of these forms, the Guard will not employ that person in the AGR program. *Id.*

## II. Discussion

Congress enacted the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service" and "to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. §§ 4301, *et seq.* In order to meet these goals, USERRA provides various vacation and reemployment guarantees to ensure that noncareer service members may maintain employment and advancement opportunities in civilian careers while completing military service and training as necessary. The Supreme Court has consistently held that USERRA is to be "liberally construed for the benefit of those who left private life to serve their country." *Fishgold v. Sullivan Drydock and Repair Corp.*, 328 U.S. 275, 285 (1946); *see also Dorris v. TXD Services, LP*, 753 F.3d 740, 745 (8th Cir. 2014).

The United States contends that it is entitled to summary judgment because the Guard's policy of refusing to allow dual status technicians entering the AGR program to assume LWOP-US status and denying them the fifteen days of military leave afforded to LWOP-US status-holders violates USERRA. Defendants argue that the Guard's policy is permissible in that it does not affect any USERRA-protected rights. The Court finds that Defendants' failure to provide military leave to Plaintiffs violates USERRA. Military

4

leave is a benefit mandated by USERRA and the AGR Checklist and Statement of Understanding are not sufficient to waive that right.

### A. USERRA Benefits

USERRA requires that civilian employers[3] make accommodations for employees who are absent due to a period of service in the uniformed services:

> . . . [A] person who is absent from a position of employment by reason of service in the uniformed services shall be –
>
> (A) deemed to be on furlough or leave of absence while performing such service; and
>
> (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

38 U.S.C. § 4316(b)(1). USERRA also prohibits discrimination against military personnel. *Id.* at § 4311(a). The United States contends that Defendants violate these statutes by forcing AGR participants to take on Separation-US status and denying them the annual fifteen days of military leave available to LWOP-US status holders.

"Sections 4311(a) and § 4316(b)(1) explicitly protect 'benefits' of employment, which USERRA broadly defines as including 'any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or

---

[3] Defendants argue briefly that as a "military employer," they cannot discriminate based on military service. However, in their Answer, Defendants admit that per USERRA the Guard is a civilian employer of National Guard Technicians employed under Section 709 of Title 32 of the United States Code. As such, Defendants are subject to USERRA.

5

practice.'" *Dorris v. TXD Services, LP*, 753 F.3d 740, 745 (8th Cir. 2014). Federal law is well settled that "military leave afforded by 5 U.S.C. § 6323(a) is a benefit of employment." *Pucilowski v. Dept. of Justice*, 498 F.3d 1341, 3144 (Fed. Cir. 2007) (citing *Butterbaugh v. Dept. of Justice*, 336 F.3d 1332, 1336 (Fed. Cir. 2003)). Therefore, eligible military personnel are entitled to military leave from their civilian employer as a USERRA protected benefit. *See* 38 U.S.C. § 4316(b)(1).

The United States argues that Defendants violate 38 U.S.C. § 4316(b)(1)(A) when they classify dual status technicians taking full-time positions in the AGR program as Separation-US rather than LWOP-US. The United States argues that all absent civilian employees must be "deemed to be on furlough or leave of absence," and any classification to the contrary violates USERRA. However, the Code of Federal Regulations, as cited by the Eighth Circuit, makes clear that an employer's classification scheme is "of no effect" in the ultimate determination of whether the employer's actions violated USERRA. *Dorris v. TXD Services, LP*, 753 F.3d 740, 744 (8th Cir. 2014). Individuals on leave to perform military service are entitled to benefits of employment regardless of how an employer classifies the servicemember's absence:

> During a period of service in the uniformed services, the employee is deemed to be on furlough or leave of absence from the civilian employer. In this status, the employee is entitled to the non-seniority rights and benefits generally provided by the employer to other employees with similar seniority, status, and pay that are on furlough or leave of absence. Entitlement to these non-seniority rights and benefits is not dependent on how the employer characterizes the employee's status during a period of service. For example, if the employer characterizes the employee as "terminated" during the period of uniformed service, this characterization cannot be used to avoid USERRA's requirement that the employee be deemed on furlough or leave of absence, and therefore entitled to non-seniority

6

>rights and benefits generally provided to employees on furlough or leave of absence.

20 C.F.R. § 1002.149.  Likewise, Defendants may not use their characterization of AGR program participants as Separation-US status to avoid providing military benefits of employment.  Regardless of Defendants' classification of these individuals, dual status technicians "absent from [their jobs] by reason of service in the uniformed services" are entitled to protected USERRA benefits.

Defendants argue, however, that military leave under 5 U.S.C. § 6323(a) is not a USERRA-protected benefit because USERRA protects only rights which an employer gives to its non-military employees.  Because the fifteen days of military leave is never given to civilian employees who are not providing military service, it cannot be a right protected by USERRA according to Defendants.  The Court is not persuaded by this argument, as Defendants admit that USERRA entitles at least some subset of military employees to leave under 5 U.S.C. § 6323(a), leave which is never afforded to non-military personnel.  Furthermore, the cases Defendants cite in support of their contention address situations in which employers had unilateral policies affording additional benefits or rights to absent military personnel.  While courts have consistently held that employers do not commit a USERRA violation in revoking these extra benefits, these cases do not address USERRA rights provided by statute.[4]  *See Crews v. City of Mt. Vernon*, 567 F.3d

---

[4] Defendants assert for the first time in their reply brief in support of their Motion for Summary Judgment that 5 U.S.C. § 6323(a)'s provision according military servicemembers leave "without loss in pay" means that even if military leave is a protected USERRA benefit, the AGR participants denied military leave may not recover damages because they were receiving no paycheck for work as a dual status technician at the time leave was denied; thus, their salaries were $0 and they suffered no losses.  The

7

860, 865 (7th Cir. 2009) (rescission of a flexible work scheduling program did not constitute a USERRA violation); *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 889 (7th Cir. 2011) (rescission of differential pay policy did not violate USERRA); *Welshans v. U.S. Postal Serv.*, 550 F.3d 1100, 1104 (Fed. Cir. 2008) (holding that revocation of benefits provided by the Employee and Labor Relations Manual did not implicate USERRA). There is simply no plausible argument that military leave benefits are not benefits specifically provided by 5 U.S.C. 6323(a) and thus protected by USERRA.

Defendants also argue that even if military leave is a benefit guaranteed by USERRA, it is not a benefit to which a career military person is entitled. According to Defendants, the AGR job is a career military position and it would make no sense for someone making a career in the military to continue to get any civilian pay. It is true that once an individual's civilian employment is terminated from civilian employment, he or she is no longer entitled to military leave benefits. But there is evidence that some of the dual status technicians participating in the AGR program do so only in a temporary active duty capacity, and not in a career capacity that forever terminates their employment as a dual status technician. The AGR program specifically provides for "[e]ntry into the program of soldiers who may desire to serve only initial or occasional AGR tours, as well as soldiers who serve in a career duty status." Army Reg. 135-18, ¶ 1-6(d). Defendants state that "[o]ver the past four years, approximately 125 former dual technicians have

---

Court is not persuaded by Defendants' argument, as individuals absent by reason of active duty would not generally be receiving a paycheck from their civilian employer in any circumstance, and the statute still provides that they be compensated for fifteen days of military leave for active duty service. The cases cited by Defendants do not address the active duty context.

8

entered the Missouri National Guard's AGR program, with only about one or two returning to the dual technician program each year." [Doc. 47, p. 2]. It is thus uncontroverted that Defendants are aware that not all dual status technicians entering the AGR program intend to or will make their AGR service a career, and that some AGR program participants will return to their dual status technician position.

Furthermore, the Court previously found in its order denying Defendants' motion to dismiss that AGR service does not inherently constitute an abandonment of an individual's civilian position in favor of a military career. [Doc. 23, p. 5]; *citing Lindsley v. Office of Pers. Mgmt.*, 126 F. App'x 959, 960 (Fed. Cir. 2005); *Lapine v. Town of Wellesley*, 304 F.3d 90, 102 (1st Cir. 2002).

Finally, there is a specific USERRA benefit waiver provision in 38 U.S.C. 4316(b)(2)(A) which is discussed below. This waiver provision is the mechanism Congress chose to determine whether a person entering the military intends to remain in the military indefinitely or intends to return to his or her civilian employment. As stated in *Dorris*, an artificial classification, whether it be "career" or "Separation-US," is not controlling.

Therefore, the Court concludes as a matter of law that the Guard violated USERRA by refusing to provide military benefits to AGR employees who did not waive those benefits pursuant to 38 U.S.C. § 4316(b)(2)(A).[5]

---

[5] The United States also argues that the Guard violated the anti-discrimination section of USERRA, 38 U.S.C. § 4311(a). The Court need not address this issue because it has found a violation of 38 U.S.C. 4316(b)(2).

9

## B. Waiver of USERRA Benefits

Defendants contend that to the extent military leave under 5 U.S.C. § 6323(a) is a protected benefit, AGR program participants waived that right through execution of the AGR Checklist and Statement of Understanding. USERRA states that individuals who "knowingly provide[] written notice of intent not to return to a position of employment after service in the uniformed service, [are] not entitled to rights and benefits" protected by the statute. 38 U.S.C. § 4316(b)(2)(A). However, in order for the waiver to be effective, Defendants "have the burden of proving that a person knowingly provided clear written notice of intent not to return to a position of employment after service in the uniformed service and, in doing so, was aware of the specific rights and benefits to be lost." *Id.* at § 4316(b)(2)(B).[6]

Defendants contend that the AGR Checklists and Statements of Understanding signed by AGR participants are sufficient to constitute statutory waiver of any USERRA protected military leave benefit. But USERRA does not provide that protected benefits may be waived through individual waiver of the benefits themselves. Instead, waiver may only be effectuated when an employee knowingly provides written notice of his or her "intent not to return" to their civilian position. The Guard's purported waivers could have contained a clear statement to that effect. Instead, the Guard used the term

---

[6] The common law also provides that an employee may waive USERRA rights by voluntarily resigning from a civilian position and pursuing a career in military service if they do so "clearly and unequivocally." *Paisley v. City of Minneapolis*, 79 F.3d 722, 724 (8th Cir. 1996); [Doc. 23, p. 3]. However, Defendants do not argue in their motion for summary judgment that Kinata Holt waived her military leave rights under the common law waiver standard, and therefore it is not addressed by the Court.

10

"SEPARATING," capitalized to suggest a term of art. As previously explained, Separation-US as used by the Guard means:

> A separation action initiated by an agency when the employee enters on duty with the uniformed services and provides written notice of intent not to return to a position of employment with the agency *or* elects to be separated in lieu of placement in a leave without pay status.

[Doc. 41, p. 6; Doc. 49, p. 4] (emphasis added). Thus, the term encompasses something other than a statement that the employee does not intend to return to her civilian position. The AGR Checklist also specifically references the AGR applicant's understanding that by "electing Separation-US," he or she will no longer be eligible for military leave. The reference to this election clearly distinguishes the AGR participant's status choice from a separation action initiated through provision of a written notice of intent not to return. The failure to use the statutory language is additionally confusing because the AGR Checklist and Statement of Understanding also discuss the right to reemployment under USERRA immediately after discussing separation status without explaining how one could have the present intent to never return to their civilian employment, but still have a right to do so in the future.

### III. Conclusion

Because AGR participants' execution of the AGR Checklist and Statement of Understanding is insufficient for Defendants to successfully invoke waiver of military leave, the United States' motion for partial summary judgment is granted to the extent it

requests a finding that Defendants violated USERRA by denying Holt fifteen days of military leave.[7] Defendants' motion for summary judgment is denied.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: December 19, 2014  
Jefferson City, Missouri

---

[7] The Court has not addressed the question of whether the Guard violates USERRA by requiring dual status technicians, as a condition of their employment in the AGR program, to terminate their civilian employment and give up their waivable USERRA rights. Instead, it has resolved this case and controversy on the narrowest grounds.